## Marguerite Favar, Appellee, v. Riverview Park, Appellant.

### Gen. No. 13,969.

1. DAMAGES—*what evidence not competent to establish.* Evidence of the value of an amusement park "privilege" estimated by guessing at or stipulating upon future uncertain profits, is incompetent. Elements or facts which support the estimate must be given in order to render it competent.

2. DAMAGES—*when loss of future profits should not be awarded.*
Loss of future profits of a purely speculative nature cannot properly
be included in an award of damages.

3. MEASURE OF DAMAGES—*in action for failure to give possession
of leased premises.* The measure of damages for failure to give
possession of leased premises is the difference between the actual
rental value and the rent reserved to be paid by the lease. The same
rule applies to a farm, a dwelling house, a hotel or business prem-
ises. The rule is varied in the case of an established business, in
which case the measure of damages would be the difference between
the rent and the value of the lessee's business, which would neces-
sarily include an allowance for profits.

Assumpsit. Appeal from the County Court of Cook county; the
Hon. WM L. DEWOLF, Judge, presiding. Heard in this court at the
October term, 1907. Reversed and remanded. Opinion filed October
8, 1908.

JOSEPH H. FITCH, for appellant.

EDWARD R. LITZINGER, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the
court.

The conclusion reached by the court necessitates a
new trial of the cause; consequently the questions of
fact involved rest for their solution with the jury be-
fore whom the cause may be next tried, or the judge of
the County Court, if a trial by jury should be waived.
We shall therefore only refer to such portions of the
evidence as from its nature involve questions of law.

The basis of this action is the non-performance upon
the part of appellant of its undertaking in the follow-
ing writing:

"CHICAGO, June 18, 1906.

The privilege for the season of 1906 is granted to
Marguerite Favar of St. Augustine, Florida, now of
Chicago, to install at her own expense the Princess
Corena Show with an appropriate wood front and tent
back on the South Pike line next east of Photograph
Gallery, and to include the vacant space in the rear of
the place hereby granted and in the rear of the present
booth space reserved to the occupants of said booths

between the Photograph Gallery and Bratwurst Restaurant, providing the sum of one hundred dollars, $100, is paid before possession is taken, and thereafter 25 per cent of the gross receipts, the usual salary of cashier to be selected by the Park company and electricity at cost to the Park.

(Signed)    WM. M. JOHNSON, Secretary."

On the day of the date of this writing the U. S. Tent & Awning Company sent its check for account of appellee for $100 to appellant, which was afterwards returned when appellant discovered that it was unable to deliver to appellee the plot of ground in the writing mentioned. This $100 was paid, it is contended, not for the contract, or as rent, or as a consideration for the making of the contract by appellant, but for the purpose, as appellant contends, and the proof indicates, to compensate the then occupant of the plot for removing therefrom his unprofitable paraphernalia, termed a "Razzle Dazzle," so that appellee might instal thereon her contemplated "Princess Corena" show.

Appellant did not comply with the terms of its contract for the reason, so it claims, that it could not procure the removal of the so-called "Razzle Dazzle." Appellee commenced this suit in an effort to recover damages which she claims she suffered consequent upon appellant's failure to carry out its part of said contract. Appellee contends that the writing in question is a "privilege," and proceeded to prove damages upon the theory of the value of such privilege; while appellant contends that the writing is in the nature of a lease of the plot of ground therein described, and that the percentage of receipts fixed as compensation for its use is rent therefor, and that damages for a breach must be measured upon the principles applicable to a failure to give possession under a covenant so to do usually found in leases of realty. We do not regard it as necessarily affecting the rights of the parties or our decision of the controversy, whichever of these two

methods are adopted in admeasuring the damages to be awarded, for under either theory the measure of damages must be the same.

Following the delivery of the contract appellee caused to be ordered material consisting of canvas and lumber sufficient to construct a tent 28x50 with wooden flooring, stage, etc., to cost $1,065, and enough canvas was cut the evening of the same day from which the tent could be constructed. Notwithstanding appellant notified appellee that possession of the land could not be given, work was continued on tent construction for two days, and then it appears from appellee's proof, the canvas was thrown ''on the scrap pile;'' but why this canvas should have been discarded in view of the fact that two days subsequent to its abandonment appellee secured a similar plot of land at San Souci Park in which she installed a canvas tent of nearly the same dimensions and constructed of the same kind of canvas in shape and color, the evidence does not disclose. Appellee engaged for the show contemplated to be given on appellant's premises four young women performers at a weekly salary of $20 each, but these engagements were canceled without expense or other loss to appellee. .Appellee also bought 2,000 descriptive posters costing $20. It may be assumed that the cost of these posters was a loss to appellee. The amount of recovery, however, was predicated upon the value of the contract as a ''privilege'' and for profits estimated that appellee would have received had appellant let her into possession of the plot of land set out in the contract. Appellee testified that the value of the ''privilege'' was. $800. Her testimony was purely conjectural and not supported by any fact from which the jury could compute the amount of damages actually sustained. Her testimony on this point was her conclusion only. On objection the same was properly stricken from the record. Appellee's witness Schwartz testified that the ''privilege'' was worth $2,000, but failed to state any

fact or element from which his conclusion as to value could be verified. He thought it was worth that amount, but his estimate was purely speculative. Appellant's motion to exclude Schwartz's testimony from the record should have been allowed, and in failing to do so the court committed reversible error. The instruction given to the jury as to the measure of damages was erroneous. The business intended to be conducted by appellee was a new venture and the profits, if any, which might be realized uncertain and purely speculative. In this situation appellee cannot recover on account of expected profits, as there is nothing tangible in the evidence to prove that a profit would have been made. Hair v. Barnes, 26 Ill. App. 580.

The measure of damages for failure to give possession of leased premises is the difference between the actual rental value and the rent reserved to be paid by the lease. The same rule applies to a farm, a dwelling house, a hotel or business premises. The rule is varied in the case of an established business, in which case the measure of damages would be the difference between the rent and the value of the lessee's business, which would necessarily include an allowance for profits. Hexter v. Knox, 63 N. Y. 561; Paposky v. Munkwitz, 68 Mo. 322.

But if the business were a new one, there could be no recovery for profits, and in that case the measure of damages would be restricted to those recoverable under the rule first recited. The profits which appellee might have made had she installed her show in appellant's park are purely speculative. The rule for assessment of damages is thus stated in 1 Sutherland on Damages, p. 111:

"The cardinal rule in relation to the damages to be compensated on the breach of a contract that the plaintiff must establish the *quantum* of his loss by evidence from which the jury will be able to establish the extent of his injury, will exclude all such elements

of injury as are incapable of being ascertained by the usual rules of evidence to a reasonable degree of certainty. Instances of such uncertain damages are profits expected from a whaling voyage, and the gains which depend in a great measure upon chance; they are too purely speculative to be capable of entering into compensation for non-performance of a contract.''

The profits to be made from a show of the character of the one appellee intended to exhibit in appellant's park are just as uncertain as those to be expected from a whaling voyage, for both depend very largely for their success upon the weather being fair or foul. As said in Lewis v. Atlas Co., 61 Mo. 534: ''In fact, the success of such enterprise depends on so many contingencies that we can conceive of no means of making the necessary proof on which to found a verdict. No rule for such ascertainment can be predicated. Past success in similar enterprises will not do. Conditions may not always remain the same.'' This reasoning applies with equal force to appellee's claim for anticipated profits as well as her attempt to fix upon a value of the contract as a ''privilege.''

Appellee is entitled, in no event, to recover more than the actual damages sustained by her by reason of appellant's breach of its contract with her, if it shall be found to have been guilty of a breach thereof, and such damage must be proven with a reasonable degree of certainty and devoid of all speculative features and free from conjecture.

We think the instruction asked by appellant should have been given, as it contains all the essential elements of damage which appellee is in any event entitled to recover. Its refusal was error prejudicial to appellant.

The judgment of the County Court is reversed and the cause remanded for a new trial conformable to the views here expressed.

*Reversed and remanded.*